# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Joseph A. Rosen,

    Plaintiff,

v.

Spirit Airlines, Inc.,

    Defendant.

Case No. 14 C 6446

Judge John Robert Blakey

## **MEMORANDUM OPINION AND ORDER**

This is a purported nationwide class action brought under the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). Section 1681c(g) requires, among other things, that no credit or debit card receipt contain "more than the last 5 digits of the card number." Plaintiff Joseph Rosen, the putative class representative here, alleges that Defendant Spirit Airlines violated Section 1681c(g) on August 15, 2014, when Mr. Rosen made a credit card purchase at Chicago O'Hare International Airport and received a receipt containing more credit card information than allowed by the statute. Mr. Rosen alleges that his experience is typical of Spirit Airlines customers nationwide.

Defendant now moves to transfer [49] this case to the United States District Court for the Southern District of Florida ("Southern District of Florida"), where Defendant has its headquarters and a similar class action is pending. Plaintiff initially opposed the motion [55] but then withdrew its opposition [63] after the

Southern District of Florida granted nationwide class certification in the case pending there.

For the following reasons, Defendant's motion to transfer [49] is granted.

**I.    Facts**

Defendant is an airline carrier incorporated in Delaware and with its headquarters in Miramar, Florida, *Rosen* Complaint ¶ 5, which is within the Southern District of Florida. In August 2014, Defendant was sued both in the Northern District of Illinois and the Southern District of Florida for violating FACTA, 15 U.S.C. § 1681c(g). There is no dispute that these two purported class actions are similar, *see, e.g.*, 4/28/15 Hr'g Tr. [56-1] at 10; [55] at 14, and with good reason.

**A.    The Northern District of Illinois Action**

On August 20, 2014, Mr. Rosen, an Illinois resident, brought this lawsuit as the putative class representative. *Rosen* Complaint ¶¶ 3-4. Mr. Rosen alleges that, in his case, on August 15, 2014, he made an in-person purchase from Defendant at Chicago O'Hare International Airport. *Rosen* Complaint ¶ 23. The receipt contained more information than allowed by FACTA, that is, "more than the last 4 digits of his credit card, his full name and the date and time of transaction." *Rosen* Complaint ¶ 24.

Mr. Rosen brings a single count under FACTA, 15 U.S.C. § 1681c(g). He alleges that his experience is typical of a nationwide class who also received receipts from Defendant that contained more credit card information than permitted by

FACTA. *Rosen* Complaint ¶ 30. Mr. Rosen, for this and other reasons, seeks to certify the following class:

> All persons nationwide to whom, within 2 years from the date of filing this Complaint (the "Class Period"), Defendant provided an electronically printed receipt that included more than the last four digits of the person's credit card.

*Rosen* Complaint ¶ 27.

## B. The Southern District of Florida Action

Nine days after this lawsuit was filed, on August 29, 2014, Christopher Legg, a Florida resident, brought a similar class action lawsuit against Defendant as the putative class representative. *Legg* Complaint ¶ 4. Mr. Legg brought suit in the Southern District of Florida, and his case is captioned *Legg v. Spirit Airlines, Inc.*, Case No. 14-61978. Mr. Legg alleges that, in his case, on August 28, 2014, he paid a $45 baggage fee by credit card at an automated Spirit Airlines kiosk at the Fort Lauderdale-Hollywood International Airport. *Legg* Complaint ¶ 25. The kiosk printed a credit card receipt that displayed the last four digits of Mr. Legg's card and, in violation of FACTA, the first seven digits too. *Legg* Complaint ¶ 25.

As Mr. Rosen did, Mr. Legg also brings a single count under FACTA, 15 U.S.C. § 1681c(g). Mr. Legg further alleges that his experience is typical of a nationwide class who also received receipts from Defendant that contained more credit card information than permitted by FACTA. *Legg* Complaint ¶¶ 43, 46. Mr. Legg, for this and other reasons, seeks to certify the following class:

> (i) All persons in the United States (ii) who, when making payment to Spirit Airlines, (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed shall

3

print more than the last 5 digits of said credit or debit card (vi) within the five (5) years prior to the filing of the complaint.

*Legg* Complaint ¶ 40. The Southern District of Florida granted nationwide class certification on June 10, 2015. *Legg*, No. 14-61978, DE 64.

## II. Analysis

Based on having its headquarters in the Southern District of Florida and the similar class action pending there, Defendant moves to transfer this case to the Southern District of Florida under 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to transfer venue under Section 1404(a) requires a weighing of factors for and against transfer. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *see also Research Automation, Inc. v. Schrader-Bridgeport International, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010). This weighing "involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219; *see also Research Automation*, 626 F.3d at 978. As the moving party, Defendant bears the burden of demonstrating that the Southern District of Florida is "clearly more convenient." *Coffey*, 796 F.2d at 219-20; *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009).

Several factors must be met for an action to be transferred to another venue: (1) venue is proper in this District; (2) venue and jurisdiction are proper in the transferee district; (3) the transferee district is more convenient for both the parties

4

and witnesses; and (4) transfer would serve the interest of justice. *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). Neither party disputes that the first and second factors are met. So this Court considers only the convenience of the parties and witnesses (Subsection A) and the interest of justice (Subsection B).

### A. Convenience of the Parties and Witnesses

To evaluate the convenience of one venue over another, this Court must consider four factors: (1) Mr. Rosen's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *Research Automation*, 626 F.3d at 978; *Jaramillo*, 664 F. Supp. 2d at 913-14. This Court addresses each factor in turn, and concludes, after considering them all, that these factors collectively favor transfer. *See Coffey*, 796 F.2d at 219-20; *Jaramillo*, 664 F. Supp. 2d at 915.

#### 1. Mr. Rosen's Choice of Forum

As the plaintiff, Mr. Rosen's choice of forum usually is given substantial weight, particularly when, as here, the forum also is Mr. Rosen's home forum. *Jaramillo*, 664 F. Supp. 2d at 914. That choice, however, is given less deference when, also as here, another forum has a stronger relationship to the dispute. *Id.* In this regard, this case parallels *Jaramillo*, 664 F. Supp. 2d at 914, where the Illinois Court found that the District of Kansas had a stronger connection to the dispute. The named plaintiff resided in the Northern District of Illinois, but the lawsuit centered on the corporate decisions a Kansas company (Applebee's) made when

5

misrepresenting the nutritional information of certain items on its menus nationwide. *Id.* Likewise, the dispute here focuses on the corporate decisions made by Defendant in its headquarters in the Southern District of Florida, that is, printing more credit card information on receipts than allowed by FACTA.

Moreover, some Courts in this District—but not all—also would discount Mr. Rosen's choice of forum because this is a putative class action. Those Courts find that if certification of a nationwide class occurs, then Mr. Rosen's (as the putative class representative) choice of venue will not be the home venue for all class members and any venue selected is bound to be inconvenient for some of them. *See, e.g.*, *Jaramillo*, 664 F. Supp. 2d at 914. But other Courts in this District disagree. *See, e.g.*, *AL & PO Corp. v. American Healthcare Capital, Inc.*, No. 14-1905, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015). For example, the Court in *AL & PO* stated its hesitance to discount the putative class representative's choice of forum because a class had yet to be certified and thus may not ultimately be certified, and unnamed class members benefit from the class representative being able to aggressively litigate without significant inconvenience due to travel. 2015 WL 738694, at *3. This Court need not weigh in on this split at this time.

For these reasons, and given the agreed nature of the motion to transfer at this point in the proceedings, Mr. Rosen's original choice of forum is given less deference in this case—even setting aside the question of what deference a putative class representative's choice of forum warrants.

### 2. Situs of the Material Events

The material events in this case concern Defendant's policy, procedure and intent to issue credit and debit card receipts to customers containing more information than allowed by FACTA. *See, e.g.*, Complaint ¶¶ 16, 18, 20-22, 29, 37-40. The relevant decisions likely were made by Defendant's employees at its headquarters in Miramar, Florida. *See* [55] at 5. As a corollary, the material events are not where customers made their purchases—a similar factual pattern that may have repeated itself across airports nationwide, in light of the multiple pending class actions. *See* Complaint ¶ 16, 27-30, 36.

This factor weighs in favor of transfer, as other Courts have found under analogous fact patterns. *E.g.*, *Jaramillo*, 664 F. Supp. 2d at 914; *Gueorguiev*, 526 F. Supp. 2d at 858. Indeed, *Gueorguiev*, 526 F. Supp. 2d at 858, also involved a motion to transfer a putative class action under FACTA, and the Court concluded, as here, that the focus under the statute will be Defendant's corporate conduct and not the fact that the class representative received an offending receipt. *See also Klingensmith v. Paradise Shops, Inc.*, No. 07-322, 2007 WL 2071677, at *2-3 (W.D. Pa. July 17, 2007) (also considering the situs of material events in a FACTA case).

### 3. Relative Ease of Access to Sources of Proof

The location of records typically has no impact on the transfer analysis unless extraordinarily voluminous or otherwise difficult to ship. *AL & PO*, 2015 WL 738694, at *3; *Gueorguiev*, 526 F. Supp. 2d at 858. That is not the case here. Defendant—who appears to bear the production burden given the issues involved—

has identified three general categories of responsive documents within its possession: (1) electronic mail messages; (2) lists of potential class members; and (3) Defendant's contracts and communications with IBM. Sturisky Decl. [41-6] ¶ 6. IBM, a third-party, may also have relevant documents, Sturisky Decl. [41-6] ¶ 11; and, to that point, Mr. Rosen already served a subpoena on IBM at its headquarters in New York, 2/17/15 Subpoena [56-3].

Defendant has not shown that there is a material difference in producing these documents whether the litigation is pending in the Northern District of Illinois or the Southern District of Florida. The identified documents either already are in electronic format or appear easily convertible into an electronic format for production. In fact, the record before this Court reveals that substantial document production already has occurred, diminishing the remaining hardship (if any) of producing documents in litigation pending in the Northern District of Illinois. *See* 5/18/15 Document Production Cover Letter [55-1] (showing that Defendant has produced 26,812 pages of documents). As for IBM, if its documents come from its New York headquarters, then both the Northern District of Illinois and the Southern District of Florida will be foreign Districts and thus neither may be more convenient than the other. *See Gueorguiev*, 526 F. Supp. 2d at 858.

For these reasons, the ease of access to documents is essentially a venue neutral factor.

### 4. Convenience of the Parties and Witnesses

The parties focus on the convenience of the witnesses. This often, but not always (as shown in this case), is the most important factor in determining whether to grant a motion to transfer. *Gueorguiev*, 526 F. Supp. 2d at 858. There are two categories of witnesses to consider: party and non-party witnesses. The convenience of non-party witnesses should be given more consideration than party witnesses (and their employees) under this factor, since party witnesses normally must appear voluntarily as part of their employment. *Jaramillo*, 664 F. Supp. 2d at 915; *Gueorguiev*, 526 F. Supp. 2d at 858; *see also AL & PO*, 2015 WL 738694, at *4. The geography of witnesses generally is more important for trial than during deposition discovery. Given the 100-mile radius of this Court's subpoena power, the parties can take depositions outside the Northern District of Illinois, but face a greater challenge if they wish to secure live, in-person trial testimony from Florida witnesses in this District. Fed. R. Civ. P. 45(c)(1); *see also Jaramillo*, 664 F. Supp. 2d at 915.

Initially, this Court must identify the prospective witnesses. This Court must go beyond just tallying their numbers in each District, and instead examine the nature and quality of their testimony with respect to the issues in the case. *AL & PO*, 2015 WL 738694, at *4; *Gueorguiev*, 526 F. Supp. 2d at 858. Duplicative testimony is discounted. *AL & PO*, 2015 WL 738694, at *4. All this, in turn, requires the moving party to provide specific information about the witness testimony. *See, e.g.*, *AL & PO*, 2015 WL 738694, at *4; *Sunrise Bidders, Inc. v.*

*GoDaddy Group, Inc.*, No. 09-2123, 2011 WL 1357516, at *3 (N.D. Ill. April 11, 2011); *Landis v. Warner Chilcott (US), LLC*, No. 10-5283, 2010 WL 5373664, at *4 (N.D. Ill. Dec. 15, 2010); *American Casualty Co. of Reading v. Filco*, No. 09-2167, 2009 WL 1766728, at *4 (N.D. Ill. June 22, 2009); *Gueorguiev*, 526 F. Supp. 2d at 858 & 858-59 n.1.

Here, Defendant has identified 20 current employees and 15 former employees as having relevant testimony. Sturisky Decl. [41-6] ¶¶ 4, 8. All the current employees live in Florida and work at Defendant's headquarters while, "[t]o the best of [Defendant's CIO's] knowledge," at least five of the former employees presently reside in Florida. Sturisky Decl. [41-6] ¶¶ 4-5, 8-9. In addition to employees, Defendant also identified two IBM witnesses who were involved in the development and maintenance of Defendant's airport kiosks. Sturisky Decl. [41-6] ¶ 10. Defendant's CIO states that to the best of his knowledge, one of the IBM witnesses resides in Pompano Beach, Florida, which is in the Southern District of Florida. Sturisky Decl. [41-6] ¶ 10. Defendant's CIO does not state where the other IBM witness resides. Sturisky Decl. [41-6] ¶ 10. Defendant identifies just 5 of these 37 witnesses by name; they were disclosed in Defendant's initial Rule 26(a) discloses dated November 21, 2014. Sturisky Decl. [41-6] ¶¶ 5, 9; Defendant's Rule 26(a) Initial Disclosures [55-1].

Based on this limited record, this Court doubts that testimony from all 35 current and former employees truly would be required at any trial, or even during

deposition discovery. Indeed, Defendant proffers identical descriptions for the relevant testimony from the 20 current and 15 former employees:

| **Current employees:** Specifically, Spirit anticipates that these employees will testify regarding the software programs utilized at Spirit's airport kiosks and Spirit's actions and, more directly, the actions of third-parties that resulted in both plaintiff Rosen and plaintiff Legg receiving the receipts on which their duplicative claims are based. Sturisky Decl. [41-6] ¶ 4. | **Former employees:** Specifically, Spirit anticipates that these employees will testify regarding the software programs utilized at Spirit's airport kiosks and Spirit's actions and, more directly, the actions of third-parties that resulted in both plaintiff Rosen and plaintiff Legg receiving the receipts on which their duplicative claims are based. Sturisky Decl. [41-6] ¶ 8. |
|---|---|

Nor has Defendant explained why any trial testimony from any of the 5 former employees who still live in Florida is required in light of 20 current employees covering the same topic areas. The other 10 former employees may no longer reside in the Southern District of Florida and, thus, the parties may face the same challenges to procure their appearance in any trial in that District or this one.

In summary, the four factors under the convenience of the parties and witnesses favor transfer. *See Coffey*, 796 F.2d at 219-20; *Jaramillo*, 664 F. Supp. 2d at 915. In particular, transferring the case to the Southern District of Florida may be the best, if only, way to secure live trial testimony from the one IBM witness who still resides in Florida and perhaps some of Defendant's former employees if their testimony is truly required. The Southern District of Florida also is the situs of the material events. Considering all factors, those interests outweigh Mr. Rosen's original choice of forum in this case (especially where, as here, he has no objection to the transfer).

11

## B. Interest of Justice

A decision to transfer venue under Section 1404(a) relies heavily on consideration of the interest of justice, which "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220; *accord Research Automation*, 626 F.3d at 978; *Jaramillo*, 664 F. Supp. 2d at 915. The interest of justice warrants transfer here.

In considering the interest of justice, this Court does not consider the merits of the underlying claim, but rather the public's interest in conserving scarce judicial resources by "efficient administration of the court system." *Research Automation*, 626 F.3d at 978. In determining which venue is more likely to result in the swift administration of justice, Courts in this Circuit analyze such factors as: (1) trying related litigation together; (2) having the trial before a judge who is familiar with the applicable law; and (3) the desire of communities to adjudicate matters that affect them directly. *Research Automation*, 626 F.3d at 978; *Jaramillo*, 664 F. Supp. 2d at 915-17 (listing these and other factors to consider). This Court considers these factors in turn.

### 1. Trying Related Litigation Together

While transfer to the Southern District of Florida may not be warranted by looking to the convenience of the parties and witnesses alone, transfer is warranted to enable this case to be coordinated or consolidated with the similar *Legg* class action. There is no dispute that the *Rosen* and *Legg* class actions are similar, *see* 4/28/15 Hr'g Tr. [56-1] at 10; [55] at 14, and with good reason. Both cases arise from

the same pattern of facts: customers of Spirit Airlines made credit or debit card purchases at airports, and the customers received receipts containing more credit card information than allowed by FACTA. From these facts, Mr. Rosen and Mr. Legg each bring a single claim under FACTA and seek to certify nationwide classes that overlap in scope. Transfer thus is warranted based on the common factual and legal issues that will arise in these two cases.

Supporting this Court's conclusion, the apparent trend among Courts in this District is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class actions is pending in the transferee district.

An exemplary case is *Jaramillo*, 664 F. Supp. 2d 908. In that case, similar to here, there were two pending class actions, with one in this District and the other in the District of Kansas. *Id.* at 911-13. The principal defendant (Applebee's) had its headquarters in Kansas; the other two defendants did not. *Id.* at 914 & n.3. At issue in both class actions was whether Applebee's had misrepresented nutritional information for its WeightWatchers menu items in its 1,900 restaurants nationwide. *Id.* at 911-13, 916. Thus, while the class representatives were Illinois residents, the operative facts—a misleading Applebee's menu—remained constant nationwide. *Id.* at 912, 916.

The Court in *Jaramillo* found that the convenience of the parties and witnesses weighed in favor of transfer but not by enough to tip the scales in favor of

13

granting the motion. 664 F. Supp. 2d at 915. What did tip the scales, however, was the interest of justice (as in this case). *Id*. at 915-16. The Court found it a waste of scarce judicial resources to have two similar class actions proceed in separate courts. Proceeding separately foreclosed the possibility of coordinating or consolidating the cases so that, for example, discovery is jointly supervised or common issues of fact or law are briefed together and considered by the same court. *Id*. at 915-17. Whether or not the cases are consolidated, proceeding separately meant that two courts would have to learn the same facts and same law. *Id*. And proceeding separately precluded the same appellate court from deciding the same issues once. *Id*. at 916. Thus, the Court granted the motion to transfer. *Id*. at 918.

A similar fact pattern was present in *Qurio Holdings, Inc. v. Comcast Cable Communications, LLC*, No. 14-7488, 2015 WL 535981, at *4-5 (N.D. Ill. Feb. 9, 2015). The Court there also granted the motion to transfer.

By comparison, Mr. Rosen has cited two cases from this District where there were two similar class actions pending in different federal districts, but, unlike here, the defendant was not located in the transferee district. [55] at 4-6 (citing *Taylor v. Midland Funding, LLC*, No. 14-9277, __ F. Supp. 3d __, 2015 WL 1456442, at *3 (N.D. Ill. March 20, 2015); *Gueorguiev*, 526 F. Supp. 2d at 857-59). The Courts did not grant the transfer motion in those cases. The cases show that the benefit of having two similar class actions proceed in the same district may not be strong enough to warrant transfer where the defendant is not located in the transferee district. When the defendant is not located in the transferee district, the

convenience of the parties and witnesses, and the situs of the material events, may not favor transfer.

Here, as in *Jaramillo* and *Qurio Holdings*, allowing the *Rosen* and *Legg* class actions to proceed in the same District enables the Florida court to coordinate or consolidate the cases to the extent it deems appropriate to shepherd them to an efficient resolution. For example:

- Fact and expert discovery has not closed in either case, and the Florida court could, to the extent it finds appropriate, impose a joint schedule or, short of that, craft a schedule for either case mindful of the other. *See Rosen*, No. 14-6446, DE 62 (fact discovery deadline of September 30, 2015); *Legg*, No. 14-61978, DE 61 (fact discovery deadline of July 28, 2015).

- The single Florida court also would be mindful of discovery issues common to both cases, such as whether the Joint Prosecution Agreement between counsel for *Legg* and *Rosen* is discoverable. That Agreement is presently the subject of a motion to compel in this case. *Rosen*, No. 14-6446, DE 57.

- It would be possible to hold a joint settlement conference, which is a significant advantage in this case given its coordinated prosecution with the *Legg* class action and Defendant's stated position that the cases be settled together or not at all. 4/28/15 Hr'g Tr. [56-1] at 3-5.

- It would be inefficient for two Courts to invest the time learning the facts common to both *Rosen* and *Legg* and then applying FACTA to those facts.

While granting the motion to transfer enables these efficiencies, denying the motion forecloses them and further creates the prospect of inconsistent rulings on discovery and dispositive motions. Some of these very considerations, in fact, also supply the rationale for class actions, as Mr. Rosen himself argues in his Complaint and in moving for class certification. *See* Complaint ¶ 32; [22] at 19-20.

Mr. Rosen had previously argued that Defendant delayed in moving to transfer. That is not a procedural bar to transfer, *see Handler v. Kenneth Allen & Associates, P.C.*, No. 10-3728, 2011 WL 1118499, at *1 n.1 (N.D. Ill. March 24, 2011), and, to the extent it matters, Defendant's delay has been incorporated into this Court's analysis of the prospective benefits of transfer. For example, had discovery already closed in both cases (and it has not), then transfer at that stage would not capture the benefits of a single Court overseeing discovery in both cases—even if that benefit had been available had Defendant moved to transfer earlier.

Mr. Rosen also had previously argued that the first-to-file rule warrants maintaining venue here because this lawsuit was filed nine days before the *Legg* class action. [55] at 13-14. In this Circuit, the first-filed rule is not a mechanical rule but rather defers to the convenience and interest of justice factors under the transfer analysis. *Research Automation*, 626 F.3d at 980-82. Thus, the Seventh Circuit has upheld the use of the transfer analysis without giving the first-filed case any supplementary weight. *Id.* at 982. Here, this Court declines to impose the first-filed rule under circumstances where its application impedes the efficient and consistent resolution of the *Rosen* and *Legg* class actions. The nine-day head start this case enjoyed does not justify delaying resolution of both cases for a longer period of time.

For these reasons, trying related litigation together weighs heavily in favor of transfer.

### 2. Familiarity with Applicable Law

The applicable law is federal statutory law under FACTA. Neither the Northern District of Illinois nor the Southern District of Florida begin with an advantage when it comes to applying federal statutory law. Nonetheless, as stated above, it would be inefficient for two Courts to invest the time learning the facts common to both *Rosen* and *Legg* and then applying FACTA to those facts. *See Jaramillo*, 664 F. Supp. 2d at 917. That effort could be made just once by one Court. This factor thus weighs in favor of transfer.

### 3. Relation of the Community to the Occurrence

This final factor is often given a great deal of weight. *See, e.g.*, *Jaramillo*, 664 F. Supp. 2d at 917. However, because the putative class here is national in scope, there is no compelling community interest that would be preserved by the selection of one venue over another. *Jaramillo*, 664 F. Supp. 2d at 917. As such, this factor is venue neutral.

## III.    Conclusion

In summary, transfer to the United States District Court for the Southern District of Florida is warranted here because the interest of justice strongly favors venue there and the convenience of the parties and witnesses does not oppose transfer.  Defendant's motion to transfer [49] this case to the Southern District of Florida is granted.  Plaintiff's motion to withdraw response [63] also is granted.  Civil case terminated.

Dated: June 17, 2015

Entered:

_____
John Robert Blakey
United States District Judge